SEXTON, Judge Pro Tem.
bThe defendant, Jeremy J. Hunter, appeals as excessive his sentence to 20 years at hard labor following his guilty plea to attempted manslaughter. For the following reasons, the defendant’s conviction and sentence are affirmed.
FACTS
The defendant had been involved in a feud between two families. On October 24, 2010, the defendant peered into the window of an apartment and saw a person sleeping on a couch. He fired numerous rounds into the apartment from a 9-mil-limeter gun, striking Denise Miller 11 times. Although severely injured, Ms. Miller survived the shooting. Ms. Miller’s two-year-old granddaughter, who was sleeping on the couch with her, was unharmed.
On February 7, 2011, the defendant was charged by grand jury indictment with the attempted first degree murder of Ms. Miller. In a separate indictment, he was charged with the attempted first degree murder of the child. The indictment regarding Ms. Miller was amended to charge the defendant with attempted second degree murder.
Eventually, pursuant to a plea agreement, the charge concerning Ms. Miller was amended to attempted manslaughter. The defendant entered a plea of guilty to that offense on January 26, 2012. The indictment regarding the child was dismissed in exchange for the guilty plea. A number of other charges against the defendant were also dismissed.
In accepting the guilty plea, the trial court ascertained that the defendant had a ninth-grade education, but had earned a GED. The ^defendant was informed of the rights waived by entry of his guilty plea, the maximum possible sentence of incarceration for attempted manslaughter, and that the trial court would formulate the sentence after reviewing a presentence investigation (“PSI”) report. The court determined that the defendant was not pleading guilty due to any force or threats. The defendant stated under oath that he shot Ms. Miller. The trial court accepted the guilty plea.
The defendant appeared before the court for sentencing on February 28, 2012. Ms. Miller testified at the sentencing hearing and urged the court to impose the maximum sentence on the defendant.
The trial court ordered the defendant to serve 20 years at hard labor, with credit for time served. The defendant filed a motion to reconsider sentence which was denied by the trial court. The defendant appealed.
EXCESSIVE SENTENCE
The defendant argues on appeal that the sentence imposed is excessive. The 20-year-old defendant argues that he is an *622 uneducated youth with no significant adult criminal history who was drawn into this shooting by a dispute between two families. He contends that with proper rehabilitation and education, he would not return to a life of crime and would not be a threat to others. He claims that, under these circumstances, the maximum sentence imposed upon him is excessive and is a violation of his constitutional rights. He claims that the maximum sentence of 20 years at hard labor is nothing more than the needless and purposeless imposition of pain and suffering. This argument is without merit.
IsLegal Principles
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Key, 46,119 (La.App.2d Cir.3/2/11), 58 So.3d 578, writ denied, 2011-0594 (La.10/7/11), 71 So.3d 310. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 2008-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Key, supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, unit denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
On the second prong of the exces-siveness test, the court must determine whether a sentence violates La. Const. Art. I, § 20. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless | infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792; State v. Key, supra. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Key, supra.
Absent a showing of manifest abuse of the trial court’s sentencing discretion, this court may not set aside a sentence as excessive. State v. Guzman, 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La. *623 App.2d Cir.5/12/04), 873 So.2d 939; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, unit denied, 2004-0597 (La.9/24/04), 882 So.2d 1165.
|5The offense of manslaughter is defined in La. R.S. 14:31, which provides in pertinent part:
A. Manslaughter is:
1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed....
The statute also provides that, under the facts present in this case, whoever commits manslaughter shall be imprisoned at hard labor for not more than 40 years.
The definition of an attempt to commit an offense and the penalty for an attempt are set forth in La. R.S. 14:27, which provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
[[Image here]]
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(3) ... he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
| ^Discussion
The trial court stated that it carefully considered the PSI report which showed that Ms. Miller was shot 11 times with a 9-millimeter gun while sleeping on a couch with her two-year-old granddaughter. She was shot twice in the left thigh, three times in the right chest, once in the left chest, once in the right shoulder, twice in the left arm, once in the right arm, and once in the left breast. Nine bullets were removed from Ms. Miller; two bullets remain in her back because their location prevents safe removal. Ms. Miller’s lungs collapsed and she was in a coma for a long period of time. She spent six weeks in a nursing home to regain her ability to walk and to use her right hand. She still has limited use of her right arm.
The court noted that at the guilty plea, the defendant claimed that he had a .22 caliber pistol and that he was accompanied by two other individuals during the shooting. The court observed that the defendant was perhaps attempting to minimize his role in the shooting, but the court found it incredible that the defendant would testify in contravention of known facts. Seventeen 9-millimeter casings were found outside the window which provided a clear view of the couch area. The court noted that every shell casing found at the scene came from a 9-millimeter gun. *624 The location of the casings in relation to the window, a window air conditioning unit and the couch, all supported the police report conclusion that one shooter with a 9-millimeter firearm, holding at least 17 rounds, fired through the window striking Ms. Miller 11 times.
|7The court observed that, although the defendant had prior arrests, the only criminal record considered by the court in imposing sentence was a 2006 conviction for simple possession of marijuana.
The court examined the criteria set forth in La. C. Cr. P. art. 894.1 in imposing sentence. The court found that there was an undue risk that during a suspended sentence or probation the defendant would commit another crime. According to the court, the defendant was in need of correctional treatment provided most effectively by commitment to a penal institution and that a lesser sentence than that imposed would deprecate the seriousness of the crime. The court noted that the crime manifested deliberate cruelty to the victim. The court stated that there was no other way to view firing 17 shots at a helpless, sleeping victim. The court considered the fact that the defendant entered upon the victim’s property without permission while armed with a dangerous weapon. The defendant violated the sanctity of her home by peering into a window and firing 11 bullets into her body, creating a risk of death or great bodily harm to more than one person. The defendant’s criminal conduct resulted in significant, permanent injury to the victim. She was left with physical and psychological scars as well as permanent partial disability.
The court noted that the defendant used a dangerous weapon in the commission of this offense. According to the court, the defendant’s actions were callous, cold, and cruel and demonstrated an absolute disregard and even contempt for the value of human life. The court observed that maximum sentences are reserved for the worst offenders and the worst | soffenses and the court was aware that the defendant received the benefit of a favorable plea bargain agreement. The court stated that the defendant was the worst kind of offender and this was the worst kind of offense. The court found that the maximum sentence for attempted manslaughter, 20 years at hard labor, was appropriate in this case.
The trial court articulated its reasons for the sentence in accordance with La. C. Cr. P. art. 894.1. The sentence is tailored to the offender and the offense and is not constitutionally excessive. It is not grossly out of proportion to the seriousness of the offense and it does not shock the sense of justice. The defendant was originally charged by two separate grand jury indictments with attempted first degree murder. He received a significant reduction in potential exposure to incarceration by being allowed to plead guilty to one count of attempted manslaughter.
The present offense involved violence arising from a dispute between families. The defendant shot through the window of a residence striking a sleeping grandmother 11 times. Miraculously, the victim survived and the young child sleeping on the couch with her was not harmed. However, the victim was seriously and permanently injured. Even though the sentence imposed was the maximum possible for the offense of attempted manslaughter, due to the circumstances of the offense and the extreme benefit received by the defendant in his plea agreement, the sentence is not excessive. The trial court acted within its discretion in sentencing the defendant to serve 20 years at hard labor.
*625 ^CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Jeremy J. Hunter.
AFFIRMED.