STEWART, J.
| )The defendant, Jacob Wayne Linder, was convicted of molestation of a juvenile, in violation of La. R.S. 14:81.2. He was sentenced to 10 years at hard labor. The defendant now appeals. For the reasons set forth in this opinion, we affirm.
FACTS AND PROCEDURAL HISTORY
On November 29, 2012, the defendant was charged via an amended bill of information[1] with molestation of a juvenile, M.G.,[2] in violation of La. R.S. 14:81.2 between March 1, 2008, and July 1, 2008, and forcible rape of M.G., in violation of La. R.S. 14:42.1(A)(1) between March 1, 2008, and July 1, 2008. The jury trial took place June 10-12, 2013, and the following facts were adduced from the witnesses’ testimony:
In May of 2008, M.G., the victim, was 13 years old and in the eighth grade at Wood-lawn Junior High School in West Monroe, Louisiana. Following a Wednesday night service at the Faith Chapel Pentecostal Church (“Faith Chapel”) in the spring of 2008, M.G. went to dinner at an IHOP restaurant with a group of her church members, which included the defendant, and the defendant’s wife, Keisha Linder (“Keisha”). L.G., M.G.’s mother, entrusted the supervision of M.G. to the defendant and Keisha. The defendant and Keisha drove separate cars to the restaurant. After dinner, Keisha, who was pregnant at the time, wanted to take their one-year-old son home. The defendant volunteered to take M.G. home. During the car ride, the defendant started rubbing on her leg. M.G. asked |2him to stop, but the defendant pulled over onto a dirt road, parked the truck, and continued trying to rub on her. The defendant moved over to the passenger side of the truck where M.G. was seated, pulled up her skirt, and removed her panties. M.G. yelled at the defendant to stop and tried to. push him away. M.G. saw the defendant unzip his pants, and noticed that he was wearing a condom. M.G. testified that the defendant raped her. The defendant then exited the truck from the passenger side and locked the door so M.G. could not escape. He got back in the truck and drove her home. Before M.G. exited the truck, the defendant said, “I hope I didn’t cross any boundaries.” M.G. arrived home around midnight, and both of her parents were asleep.
The next day, the defendant and his family were scheduled to have dinner at M.G.’s house. That morning, M.G. told L.G. that the defendant and his family could not come over for dinner. M.G. explained that the defendant rubbed her leg in the car on the way home the night before, but did not tell her mother about the rape. L.G. immediately called her husband at the time, J.G., to discuss the *1281 incident. J.G. suggested that they talk to their pastor, Reverend Roy Telano (“Tela-no”). Telano, who is the pastor of Faith Chapel, has known the defendant for more than 20 years.
When L.G. and J.G. approached Telano about the allegations regarding the defendant, he arranged a meeting at the church between the defendant, L.G., and J.G. Telano’s wife was also present. The defendant was not aware that L.G. and J.G. would be at the meeting. When confronted about the allegations, the defendant started crying, and admitted |sto inappropriately touching M.G. on her leg and apologized repeatedly. The parties did not discuss contacting law enforcement.
After the L.G. and J.G. left the meeting, the defendant told Telano “Brother Tela-no, all I did was just play with her panties.” Telano did not share this information with L.G. and J.G.
Approximately, three years later, M.G. told two of her Mends, and her youth pastor, Bobby Guichet (“Guichet”), about the incident involving the defendant. Gui-chet instructed her to tell L.G. what occurred. L.G., who was concerned about M.G.’s change in behavior and decline in grades, expressed her concerns to M.G. M.G. informed her that the defendant had raped her. Even though she promised M.G. that she would not report the rape to the police, she contacted them in April 2011.
On April 27, 2011, Dr. Meade O’Boyle, an expert in the field of pediatrics, particularly in the diagnosis and examination of child sexual abuse cases, examined M.G. The examination revealed an old scar in M.G.’s vagina. Although the scar was completely healed, O’Boyle agreed that she would describe the mechanics that would have created an injury such as this one as being forceful and painful. This scar is consistent with M.G’s statement that she bled after the offense occurred and that she had not been sexually active before or after this offense.
On April 29, 2011, Detective Jo Caston with the Ouachita Parish Sheriffs Office, who works mostly with sex crimes and child abuse, interviewed the defendant. Major Jason Pleasant with the Ouachita Parish Sheriffs Office was also present during the interview. The defendant, who Rwas not under arrest at that time, voluntarily agreed to give a statement, but requested that the interview not be recorded. After being advised of, and waiving his Miranda rights, the defendant admitted only that he touched M.G. on her leg, pulled over on the side of the road, and rubbed M.G.’s vaginal area on the outside of her panties, under her skirt. Caston arrested the defendant soon thereafter.
The jury found the defendant guilty as charged of molestation of a juvenile, in violation of La. R.S. 14:81.2, and specifically found that at the time of the act, he was exercising supervision or control over the minor. Regarding the forcible rape charge, the defendant was found not guilty. The court ordered a presentence investigation report.
On September 18, 2013, the sentencing hearing was held. Todd Bridges, the probation officer who prepared the presen-tence investigation report, testified that when he interviewed the defendant, he showed no remorse for this crime and flaunted his military service record. L.G. made a statement, describing the negative effects that this crime has had on M.G. The defendant also made a statement, stating that he prays for forgiveness everyday and that he apologized to M.G. and her family at the meeting with Telano. After a careful consideration of the criteria set forth in La. C. Cr. P. art. 894.1, the trial court sentenced the defendant to ten years at hard labor. It also informed the *1282 defendant of the sex offender notification and registration requirements.
On October 15, 2013, counsel for the defendant filed a motion to reconsider sentence, arguing the sentence was excessive. More specifically, |5the defendant argued that the trial court failed to adequately consider his lack of a criminal history, his exemplary military service, and his family obligations. This motion was denied.
The defendant appeals, asserting one assignment of error.
LAW AND DISCUSSION
In his sole assignment of error, the defendant asserts that the ten-year sentence imposed by the trial court is unconstitutionally excessive. The defendant acknowledges the seriousness of this offense that will impact M.G.’s life, but argues that the record is void of any indication that he is an ongoing threat to M.G. or others. The defendant expresses his remorse, and contends that he is not among the most egregious or blameworthy offenders.
The state responds that the trial court adequately considered the appropriate aggravating and mitigating factors pursuant to La. C. Cr. P. art. 894.1. Coupling the fact that the defendant faced a sentencing exposure of 20 years at hard labor with the serious nature of the crime, that state argues that the defendant’s ten year sentence is not excessive.
The test for reviewing an excessive sentence claim is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. 6Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered include the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Haley, 38,258 (La.App.2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. Art. I, § 20 if it is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court |7abused its discretion. State v. Williams, 03-3514 *1283 (La.12/13/04), 893 So.2d 7; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29. Absent a showing of manifest abuse of discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.5/12/04), 873 So.2d 939.
In 2008, La. R.S. 14:81.2(0 provided that a person convicted of molestation of a juvenile, when the offender has control or supervision over the juvenile, shall be fined not more than $10,000.00 or imprisoned, with or without hard labor, for not less than one nor more than 20 years, or both.
Here, the court reviewed the facts of this case and the presentence investigation report that contained both aggravating and mitigating factors. The court reviewed the letters submitted on behalf of the defendant and M.G., specifically M.G.’s letter that detailed how this offense has affected her. The defendant is married with three children, and an active member of the Louisiana National Guard. Mitigating factors considered by the trial court included the defendant’s lack of criminal history, the undue hardship that would be placed upon the defendant and his family due to his imprisonment, and his military status.
Aggravating factors considered by the trial court included the defendant’s lack of remorse for this offense, lack of concern about what might happen to his family, and his concern about what may happen to him rather than what he did to M.G. When the offense occurred, the defendant’s wife was burdened with a difficult pregnancy. The trial court noted that the | s32-year-old defendant should have been concerned about his pregnant wife and family, not engaging in sex with his fellow church member and neighbor, 13-year-old M.G. The court further stated that the defendant, who was in a position of supervision and control at the time the offense occurred, took advantage of M.G., stripping her of her irreplaceable youthful innocence, maturity, and emotional well-being. It also noted that the defendant is a sex offender, a class of offenders who are notoriously difficult to treat, and because of that may not be responsive to probationary treatment.
The defendant was sentenced to ten years at hard labor, with credit for all time served. This midrange sentence does not shock the sense of justice, nor is it disproportionate to the severity of the offense. The trial court adequately considered all of the aggravating and mitigating factors when tailoring its sentence for the defendant. After a careful review of the record, we find that the trial court did not abuse its discretion in imposing that sentence. Therefore, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. The bill of information does not specify whether the defendant was charged under subsection (A) or (C) of La. R.S. 14:81.2.

. Pursuant to La. R.S. 46:1844, the victim's initials are being used.