STATE OF LOUISIANA      *      NO. 2025-KA-0248

VERSUS      *

     COURT OF APPEAL

VERNON DEAN      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

     * * * * * * *

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 18-02594, DIVISION "C"
Honorable Kim C. Jones
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Judge Karen K. Herman, Judge Nakisha Ervin-Knott, Judge Monique G. Morial)

Ashton J. Licciardi
Assistant District Attorney
ST. BERNARD PARISH DISTRICT ATTORNEY'S OFFICE
1101 West St. Bernard Highway
Chalmette, LA 70043

     COUNSEL FOR STATE/APPELLEE

Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

     COUNSEL FOR DEFENDANT/APPELLANT

               **CONVICTION AFFIRMED;**
               **SENTENCE VACATED;**
               **REMANDED WITH INSTRUCTIONS**
               **FEBRUARY 11, 2026**

Defendant, Vernon Dean, appeals his conviction and sentence for armed robbery while using a firearm in violation of La. R.S. 14:64. Upon review of the record, we affirm Defendant's conviction. However, because the record reflects that the trial court, on its own motion, improperly invoked the enhanced sentencing provisions of La. R.S. 14:64.3[1] in sentencing Defendant, we vacate Defendant's sentence and remand the matter for resentencing.

## STATEMENT OF THE CASE

On July 24, 2018, the St. Bernard Parish District Attorney filed a bill of information charging Defendant with one count of armed robbery in violation of La. R.S. 14:64. The bill of information alleged that Defendant "on or about May 26, 2018, while armed with a dangerous weapon, robbed Taylor Moity" in violation of La. R.S. 14:64. On July 24, 2018, Defendant pled not guilty to the

---

[1] La. R.S. 14:64.3, in pertinent part, provides:

> When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence.

1

charge. On August 28, 2018, Defendant withdrew his not guilty plea and entered dual pleas of not guilty and not guilty by reason of insanity.

The matter proceeded to trial. On December 9, 2021, a twelve-person jury found defendant guilty of armed robbery using a firearm. On January 31, 2022, the trial judge sentenced Defendant to seventy-five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Defendant immediately moved for reconsideration of his sentence, which the trial court denied. This timely appeal followed.

## FACTUAL BACKGROUND

At trial, Neil Ponstein testified that he owned Ponstein Food Store (hereinafter "Ponstein's") located at 3523 Paris Road in St. Bernard Parish. He testified that on May 25, 2018, shortly after 11:00 a.m., he was "tidying things up around the store" when an employee, Ms. Taylor Moity, approached him visibly upset and shaking. Ms. Moity told him that "somebody pulled a gun on me and robbed me." Mr. Ponstein contacted 9-1-1 to report the robbery.

Ms. Moity testified she worked at Ponstein's for five years as the assistant manager. She described the events on May 25, 2018, and stated that she was "working alone when a gentleman in the store approached the register and [she] ran up his items. And he pulled out a handgun and demanded the money in the register." She testified that she "completely blacked out" and "completely froze." She stated the man then "cocked the handgun" which "shocked [her] back to moving… ." Ms. Moity testified that she is familiar with firearms, and understood

2

that motion to mean that a bullet was in the chamber. She "handed the money over and let it go." After the individual left the store, Ms. Moity reported the incident to Mr. Ponstein.

Still photographs and a clipped video sequence of surveillance recordings from cameras installed in both the exterior and interior of Ponstein's were introduced into evidence. Ms. Moity reviewed surveillance photographs and identified Defendant in court as the individual who approached her and robbed her.

Detective Brad Alfonso[2] with the St. Bernard Parish Sheriff's Office Detective Bureau testified that he arrived to Ponstein's on May 25, 2018, where he spoke with the responding deputies, Mr. Ponstein, and the victim. Detective Alfonso viewed the surveillance video and observed a man, identified by Ms. Moity as the individual who approached the register and robbed her, who was "wearing a baseball cap gray, a long sleeve [polo] shirt, and pair of blue jeans." Detective Alfonso identified a black sedan similar to a Nissan Maxima in the parking lot as the vehicle possibly involved in the robbery. Utilizing "a system of cameras … of the entrance and exit of St. Bernard Parish…," Detective Alfonso identified a Nissan Maxima which entered and exited St. Bernard Parish along a similar timeline as the robbery.

Next, Detective Alfonso learned that the vehicle was registered to Ms. Tracy Blanchard, later discovered to be Defendant's girlfriend, who resided at 9001

---

[2] Throughout the record, Detective Brad Alfonso's last name is spelled "Alfonso," "Alphonse," and "Alphonso." Throughout this opinion, for consistency, we will identify the responding detective as Detective Alfonso.

Dwyer Road in New Orleans. Through various records searches, officers learned that Defendant was associated with that address and, further, that Defendant's driver's license photo appeared similar to the individual identified in the surveillance photos from the Ponstein's robbery. Detective Alfonso secured an arrest warrant for Defendant.

Through a social media search, Detective Alfonso discovered that Ms. Blanchard had just given birth at Baptist Hospital on Napoleon Avenue. Officers from St. Bernard Parish in partnership with New Orleans Police Department ("NOPD") visited the hospital where they first spoke with Ms. Blanchard and arrested Defendant outside the hospital.

Officers secured a search warrant for Defendant's residence, from which officers recovered a firearm and multiple clothing items. The State introduced into evidence a firearm with the magazine and 9 millimeter cartridges, a firearm box, and a pair of Nike grey tennis shoes found inside the residence, as well as a pair of blue jeans, a grey long sleeve shirt, and a baseball hat discovered in the residence's trash can. The clothing recovered matched the clothing worn by the individual who appeared in the Ponstein's surveillance video.

On May 26, 2018, Detective Alfonso met with Defendant at the detective bureau, advised him of his *Miranda* rights, and obtained a recorded statement. In his statement, which was introduced into evidence, Defendant told detectives that he woke up in the hospital on May 25, 2018, the day after his girlfriend gave birth. He stated that his girlfriend's phone had been turned off, her car note was due, and

they desperately needed money. Defendant told Detective Alfonso that he drove his girlfriend's car to her house and retrieved a gun she had stored in a closet in the home. He then drove to Metairie or Kenner and robbed a store, but only recovered approximately $200.00. He then proceeded to St. Bernard Parish. Defendant told detectives that he had never been to Ponstein's before. In his statement, Defendant described the clothing that he wore on the day of the robbery, which Detective Alfonso testified matched the clothing of the individual on the surveillance video footage. Detective Alfonso testified that Defendant provided a full and total confession consistent with the description of the robbery provided by the victim. Defendant told detectives that he knew what he did was wrong, that he wished to apologize to the victim, and expressed suicidal ideations. However, when Detective Alfonso asked Defendant whether he would have robbed another store at some point if he hadn't been caught, he responded, "probably… ."

Defendant testified at trial that the statement he gave to detectives was true and he admitted to the armed robbery on May 25, 2018 at Ponstein's. Defendant testified that he had experienced feelings of depression his whole life that would "come and go." He dropped out of school in sixth grade due to family and transportation issues. Defendant testified that he "really felt bad about cocking the gun in front of [Ms. Moity]." He acknowledged that armed robbery is not "the right thing to do."

Defendant admitted to previously using and selling drugs, but was never convicted of any drug related offenses. Defendant acknowledged that he had been previously convicted of armed robbery in Louisiana and subsequently in Texas.[3]

Defendant presented the testimony of Dr. Craig Trosclair and Dr. Gina Mire, the court-appointed medical experts who evaluated Defendant to determine his sanity at the time of the May 25, 2018 robbery.[4] Dr. Trosclair testified that Defendant dropped out of school in sixth grade and spent the majority of his adult life incarcerated. He also testified that Defendant spent approximately eighteen years in prison and had been released approximately one year prior to the time of the May 25, 2018 robbery. Dr. Trosclair evaluated Defendant and found some symptoms of a mood disorder but did not find that Defendant could not distinguish between right and wrong at the time of the crime.

Dr. Mire testified that she evaluated and interviewed Defendant on four occasions and ultimately diagnosed him with major depressive disorder. Despite Defendant's years of incarceration and difficult childhood, however, Dr. Mire maintained that Defendant was able to differentiate between right and wrong at the

---

[3]The State introduced into evidence a certified copy of Defendant's prior 1997 Louisiana convictions pursuant to a guilty plea for attempted armed robbery, attempted second degree murder, and first degree robbery, for which he received a ten-year sentence. Defendant testified that he again pled guilty to aggravated robbery on June 24, 2010, in Texas, for which he served an eight-year sentence. Defendant had been released from prison in Texas for approximately one year prior to the robbery at issue.

[4] Dr. Trosclair and Dr. Mire also evaluated Defendant to determine his competency to proceed to trial. On December 18, 2018, following a competency hearing, the trial court accepted the joint stipulation of the State and defense and found Defendant incompetent to stand trial. On June 18, 2019, pursuant to a joint stipulation of the State and defense, the trial court accepted the joint stipulation of the State and defense and determined that Defendant was competent to stand trial.

time of the Ponstein's robbery. She opined that Defendant "always said that he understood what he did was wrong" at the time of the robbery.

## ERRORS PATENT REVIEW

Prior to reviewing the merits of any criminal appeal, this Court is tasked with examining the record for any errors patent in accordance with La. C.Cr.P. art. 920. "An error patent is one 'that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.'" *State v. Dixon*, 25-0105, --- So.3d ----, ----, 2025 WL 3540914, at * 7 (La. App. 4 Cir. 12/10/25 (quoting La. C.Cr.P. art. 920(2)). Our review of the record reveals one error patent requiring corrective action, which is also raised by Defendant as an assignment of error on appeal.

The record reflects that the trial court, on its own motion, improperly invoked the enhanced sentencing provisions of La. R.S. 14:64.3.[5] A conviction for the crime of armed robbery in violation of La. R.S. 14:64 requires the State to prove that a defendant took something of value from another while armed with a dangerous weapon. *State v. Myles*, 23-0585, p. 6 (La. App. 4 Cir. 2/5/24), 384 So.3d 938, 943 (citing *State v. Love,* 50,238, p. 4 (La. App. 2 Cir. 1/13/16), 185 So.3d 136, 140). "The charge of armed robbery with a firearm (La. R.S. 14:64.3) is

---

[5]The Uniform Sentencing Commitment Order reflects that defendant was sentenced to 75 years at hard labor for his conviction for armed robbery in violation of La. R.S. 14:64. The transcript reflects that the trial judge sentenced defendant to 75 years at hard labor under the provisions of both La. R.S. 14:64 and 14:64.3. When there is a discrepancy between a minute entry or the Uniform Sentencing Commitment Order and the sentencing transcript, the transcript prevails. *State v. Ketchens*, 24-504, p. 5 (La. App. 5 Cir. 7/30/25), 420 So.3d 239, 243; *State v. Robinson*, 05-0813, p. 3 (La. App. 4 Cir. 3/15/06), 929 So.2d 158, 159; *State v. Jones,* 03-3542, p. 11 (La. 10/19/04), 884 So.2d 582, 589; and *State v. Lynch,* 441 So.2d 732, 734 (La. 1983).

not distinct from armed robbery (La. R.S. 14:64); it simply subjects the defendant to a five-year sentence enhancement based on the use of a firearm during the [commission] of the offense." *State v. Myles*, 23-0585, p. 6, 384 So.3d at 943 (citing *State v. Durant,* 00-1246, p. 2 n. 1 (La. App. 5 Cir. 12/27/00), 776 So.2d 1265, 1267 n. 1 ("La. R.S. 14:64.3 does not create a new crime, but simply enhances the penalties for a violation of La. R.S. 14:64, the armed robbery statute… .").

A trial court on its own motion cannot invoke the sentencing enhancement provisions of La. R.S. 14:64.3 where the State failed to charge the statute in the bill of information or file a written notice invoking its provisions. *See generally State v. Hardy*, 21-105, pp. 23-25 (La. App. 3 Cir. 7/13/22), 344 So.3d 821, 836-838; *State v. Robinson*, 06-464, p. 4 (La. App. 5 Cir. 12/12/06), 947 So.2d 783, 785; and *State v. Smith*, 19-395, p. 15 (La. App. 5 Cir. 3/13/20), 293 So.3d 732, 742-43.

In this case, the record reflects that the bill of information charges Defendant with armed robbery with a dangerous weapon in violation of La. R.S. 14:64 and does not reference the use of a firearm or La. R.S. 14:64.3. The record further reflects that the State failed to file a written notice to invoke the enhanced sentencing provisions of La. R.S. 14:64.3 prior to trial. In fact, the sentencing transcript and record indicate that the trial court invoked the sentencing provisions of La. R.S. 14:64.3 on its own motion.

Because the trial court cannot trigger enhancement on its own motion, we find that the trial court erred in sentencing Defendant. When the trial court

8

improperly invokes the sentencing provisions of La. R.S. 14:64.3 and the sentence imposed is within the legal statutory range for the crime of armed robbery, this error may require that a defendant's sentence be vacated and the matter remanded to the trial court for resentencing in its discretion. *State v. Hardy*, 21-105, pp. 24-25, 344 So.3d at 837-838. Accordingly, we vacate Defendant's sentence and remand the matter to the trial court for resentencing.

## ASSIGNMENTS OF ERROR

On appeal, Defendant challenges only the sentence imposed. First, Defendant contends that his seventy-five year sentence is constitutionally excessive under the circumstances of this case. Second, Defendant contends that the trial court erred in invoking the enhanced sentencing provisions of La. R.S. 14:64.3 on its own motion, where the State failed to charge the statute in the bill of information and failed to file a written notice to invoke the provisions of La. R.S. 14:64.3. The State, in its brief to the Court, acknowledges this error and concedes that neither the bill of information nor the record as a whole provides written notice to Defendant that the sentencing provisions of La. R.S. 14:64.3 would be invoked.

Because we have vacated Defendant's sentence pursuant to our errors patent review, Defendant's assignment of error challenging his sentence is moot.[6]

---

[6] Because we vacate Defendant's sentence and remand to the trial court for resentencing, we do not address Defendant's argument that his seventy-five year sentence for armed robbery is unconstitutionally excessive.

**DECREE**

For the reasons provided herein, we vacate Defendant's sentence and remand this matter to the trial court for resentencing.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED;**
**REMANDED WITH INSTRUCTIONS**